# EXHIBIT A

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

KIRILL VESSELOV, an individual,
MIKHAIL VESSELOV, an individual, and
HAVEN HEALTH MANAGEMENT, LLC,
Florida Limited Liability Company,

     Plaintiff,                                                                                    CASE NO.:

v.

LAIRD HARRISON, an individual, and
MEDSCAPE LLC, a New York limited liability
Company,

     Defendants.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, KIRILL VESSELOV, an individual, MIKHAIL VESSELOV, an individual and HAVEN HEALTH MANAGEMENT, a Florida Limited Liability Company ("Plaintiffs"), by and through their undersigned counsel, hereby sue Defendants LAIRD HARRISON, an individual, and MEDSCAPE, LLC, a New York limited liability company (collectively, "Defendants") and allege as follows:

## I.    INTRODUCTION

1) This action arises from the publication and dissemination of written defamatory statements published in an article on the Medscape website about Plaintiffs.

2) Defendants MEDSCAPE, LLC, ("MEDSCAPE") is disseminating disinformation by publishing defamatory content on their website which is accessible throughout the United States, including in Palm Beach County, Florida.

3) On or about May 16, 2022, an article was written by LAIRD HARRISON, ("HARRISON") entitled *Gilead Settles With Defendants in HIV PrEP Fraud Lawsuit* ("the

Article"), about Plaintiffs, which appears on the MEDSCAPE website. The article can be accessed at: https://www.medscape.com/viewarticle/974065#vp_1.

4) According to the Article,

> "*Laird Harrison writes about science, health, and culture. His work has appeared in national magazines, in newspapers, on public radio, and on websites. He is at work on a novel about alternate realities in physics. Harrison teaches writing at the Writers Grotto. Visit him at www.lairdharrison.com or follow him on Twitter: @LairdH. For more news, follow Medscape on Facebook, Twitter, Instagram, and YouTube.*"

5) During the period between May 16, 2022 and through the present time, Defendants created, disseminated, and published information in an Article on the MEDSCAPE website to a multitude of readers across the United States, including in Palm Beach County, Florida. The Article was accessed and read by the general public across the United States, including in Florida and in Palm Beach County, Florida.

6) The Article contained false, defamatory statements about Plaintiffs.

7) The Article damaged Plaintiffs personally, professionally, and damaged their business HAVEN HEALTH MANAGEMENT, LLC.

8) A true and correct copy of the Article is attached hereto as **Exhibit "A."**

## II.   THE PARTIES VENUE AND JURISDICTION

9) This is an action for damages and injunctive relief that exceeds the jurisdictional limit of $50,000.00 in the Fifteenth Judicial Circuit Court in and for Palm Beach County, Florida, exclusive of interest, attorney's fees, and costs.

10) Plaintiff, MIKHAIL VESSELOV ("MIKHAIL") is a resident of Palm Beach County, Florida and is otherwise *sui juris*.

11) Plaintiff, KIRILL VESSELOV ("KIRILL") is a resident of Palm Beach County, Florida and is otherwise *sui juris*.

12) Plaintiff, HAVEN HEALTH MANAGEMENT LLC, ("HAVEN HEALTH") is a limited liability company registered in Florida with a principal place of business in Palm Springs, Florida. Its registered agent and only listed officer is United Central Service Company, Inc., which upon information and belief, Plaintiff KIRILL owns and controls.

13) Upon information and belief, Defendant, LAIRD HARRISON is a resident of Alameda County, California and is otherwise *sui juris*. HARRISON is the author of the Article written about Plaintiffs.

14) Upon information and belief Defendant MEDSCAPE, LLC is a limited liability company registered in New York. MEDSCAPE published the Article on its website.

15) Defendants disseminated defamatory statements and disinformation about Plaintiffs.

16) Venue is proper in this Court because Defendants intended to and did publish the Article which is accessible in the state of Florida, including Palm Beach County. Defendants published the Article nationally on MEDSCAPE's website, which is accessible in Palm Beach County Florida. Venue is proper in this Court because the claims and causes of action accrued in Palm Beach County, Florida. Venue is proper in this Court because this Court has personal jurisdiction over Defendants.

17) This Court has personal jurisdiction over Defendants because the events that gave rise to Plaintiffs' claims occurred in Palm Beach County, Florida.

18) This Court has personal jurisdiction over Defendants because they conspired to and did publish the Article on MEDSCAPE's website.

19) This Court has personal jurisdiction over Defendants:

a) pursuant to Section 48.193(1)(a)(1), Florida Statutes, because the causes of action arise from Defendants "operating, conducting, engaging in, or carrying on a business venture in this state;"

    b)  because Defendants continuously and systematically do business in Florida;

    c)  pursuant to Section 48.193(1)(a)(2), Florida Statutes, because the causes of action arise from Defendants "committing a tortious act within this state."

    d)  pursuant to Section 48.193(1)(a)(6), Florida Statutes, because the causes of action arise from Defendants "causing injury to persons...within this state arising out of an act or omission by [Defendants] outside this state" and "at or about the time of the injury" Defendants were "engaged in solicitation or service activities within the state," and "products...processed, serviced, or manufactured anywhere" by Defendants "were used or consumed within this state in the ordinary course of commerce, trade, or use."

    e)  pursuant to Section 48.193(2), Florida Statutes, because Defendants are engaged in substantial and not isolated activity within Florida, and therefore, Defendants are subject to the jurisdiction of the court of this state.

### III. BACKGROUND

20) Plaintiffs KIRILL, MIKHAIL and HAVEN HEALTH were three (3) of many named defendants in a lawsuit filed by Gilead Sciences Ireland UC and Gilead Sciences Inc., ("Gilead") on November 30, 2020, in the Southern District of Florida, bearing case No.: 1:20-cv-24523-AMC.

21) According to the lawsuit, Gilead sought injunctive relief against the approximately eighty (80) named defendants alleging that the defendants engaged in a scheme to steal money from Gilead's Advancing Access® Medication Assistance Program ("MAP"), a charitable program funded by Gilead which provides medication to those eligible individuals who are at risk of becoming infected with HIV.

22) Plaintiffs were not found guilty of any of the claims asserted against them in the Gilead lawsuit.

23) Plaintiffs KIRILL and MIKHAIL, along with their flagship company, HAVEN HEALTH are highly respected business owners in the mental and behavioral health fields. Their companies combined, have served tens of thousands of patients nationwide over the course of more than a decade, with an impeccable record of performance and compliance.

24) Plaintiffs KIRILL, MIKHAIL and HAVEN HEALTH's reputations are valuable for them in their community.

### IV.   DEFENDANTS' DEFAMATORY ARTICLE AGAINST PLAINTIFFS

25) The Article was written by Defendant HARRISON. HARRISON wrote the article in 2022 with the intention that it would be published on MEDSCAPE's website.

26) HARRISON provided the article to MEDSCAPE and agreed and conspired with MEDSCAPE for the article to be published on MEDSCAPE's website. Upon information and belief, MEDSCAPE paid HARRISON for the Article.

27) The Article was published by MEDSCAPE on MEDSCAPE's website on or about May, 2022.

28) Accordingly, MEDSCAPE and HARRISON agreed and conspired to defame Plaintiffs through the publication of the Article on MEDSCAPE's website.

29) The Article is misleading and riddled with false information.

30) Upon information and belief, during HARRISON's "investigation" which occurred prior to drafting the Article, someone from HARRISON called an attorney for KIRILL and MIKHAIL, Staci Genet Esq., located in West Palm Beach, Florida. Ms. Genet had only represented KIRILL and MIKHAIL for a few months and was not the lead counsel representing them in the Gilead case. General Counsel Cheyenne N. Riker, Esq. and other outside counsel, had litigated the Gilead case since it was filed, were not contacted to give KIRILL and MIKHAIL's position on the matter, despite Mr. Genet's directive to HARRISON

to contact Mr. Riker directly. Rather, HARRISON left KIRILL and MIKHAIL's story out of the Article completely, choosing only to use Gilead's words against them.

31) The Defendants acted with knowledge of the falsity of the statements contained in the Article with the intent to harm Plaintiffs and with knowledge of the fact that they lacked support for the false and defamatory statements in the Article that was published.

32) Defendants knew their statements about Plaintiffs were factually inaccurate when they published the statements in the Article and/or acted with reckless disregard for whether their statements were true when they published the statements made in the Article.

33) The faslehoods in the Article are contradicted by the facts in the public record.

34) The Article misinforms the reading public with false information about the allegations in the Gilead complaint.

35) The Article starts out with the following false representations and claims that "HIV drugs were sold on the black market. Clinics profited from a charity program. The owners purchased mansions and jets."

36) The Article falsely states and falsely represents that Plaintiffs sold HIV drugs illegally, unlawfully embezzled monies from charity, and engaged in illicit money laundering through their purchase of mansions and jets and other lavish items with the proceeds of Plaintiffs' alleged illegal and criminal activities.

37) At a minimum, the Article mischaracterizes the allegations in the Gilead lawsuit by falsely stating and representing that the allegations are that Plaintiffs sold HIV drugs illegally, unlawfully embezzled monies from charity, and engaged in illicit money laundering through their purchase of mansions, jets and other lavish items with the proceeds of Plaintiffs' alleged illegal and criminal activities.

38) The Article mischaracterizes the lawsuit and the allegations against the Plaintiffs. The allegations in the Article appear to apply to every defendant in the Gilead lawsuit. The allegations are entirely false, and Gilead did not make the allegations elucidated in the Article against Plaintiffs.

39) The Article further represents that Plaintiffs defrauded Gilead and used the money to buy a substantial real estate portfolio. The Article falsely represents that the Gilead lawsuit alleged that Plaintiffs "provided false paperwork" in order to receive reimbursement from Gilead in connection with the MAP program referenced in the Article.

40) The Article falsely represents that the Gilead lawsuit alleged that Plaintiffs sold "PrEP" drugs on the black market.

41) The Article falsely represents that KIRILL and MIKHAIL were "key defendants" and "two of the alleged Kingpins" in the lawsuit.

42) The allegations made in the Article about the Plaintiffs are entirely false. Plaintiffs were doing quality healthcare work for long before Gilead filed its lawsuit. Furthermore, KIRILL and MIKHAIL's vast majority of their real estate was owned far in advance of the lawsuit, and their "mansions and jets" preceded any dealings with Gilead.

43) The Article set out to effectively smear the Plaintiffs and their reputation, and recklessly leave out numerous facts about the Plaintiffs that would provide an alternative view of the case. Rather, the Article claims that Plaintiffs were engaged in a criminal enterprise intended to defraud Gilead.

44) Defendants therefore acted with reckless disregard for whether their statements were true or false.

45) Defendants deliberately published the Article on the internet, which was published and accessible by residents in Florida, including in West Palm Beach County, Florida.

46) Defendants acted for the sole purpose of causing harm to Plaintiffs' reputation and as a result Plaintiffs' reputations have been damaged.

47) In addition, Defendants HARRISON and MEDSCAPE knew they lacked support for the false and defamatory statements when they published the Article. Defendants knew they had no actual evidence to support their representations because no such evidence exists. Indeed, the complaint filed in the Gilead lawsuit contradicts the representations contained in the Article.

48) Plaintiffs have wasted their time and money rebutting the false allegations. Plaintiffs' reputation has been injured by the statements in the Article. The Article's characterization of the lawsuit makes it appear as though KIRILL and MIKHAIL defrauded Gilead, and used the money to buy their substantial real estate portfolio.

49) As a result of the foregoing conduct, Plaintiffs have no choice but to initiate this litigation.

V. **DEFENDANTS WERE PLACED ON NOTICE REGARDING THE DEFAMATION**

50) On June 10, 2022, Plaintiffs, by and through HAVEN HEALTH MANAGEMENT's general counsel, delivered a Pre-Suit Notice Letter (the "Notice Letter") to Defendant MEDSCAPE, pursuant to Section 770.01 of the Florida Statutes, specifying Plaintiffs KIRILL and MIKHAIL's harm caused by MEDSCAPE's conduct, and providing written demands to remedy MEDSCAPE's actions.

51) On September 27, 2023 Plaintiffs, by and through HAVEN HEALTH MANAGEMENT's general counsel, delivered a Second Pre-Suit Notice Letter (the "Second

Notice Letter") to Defendant MEDSCAPE pursuant to Section 770.01 of the Florida Statutes. The Notice Letter and Second Notice Letter are attached hereto as **Composite Exhibit "B."**

52) In these letters, KIRILL and MIKHAIL demanded that MEDSCAPE issue a removal of the Article.

53) To the date of this Complaint, MEDSCAPE failed to make any such retractions, removal of the Article or otherwise comply with Plaintiffs' demands.

## VI. CONDITIONS PRECEDENT

54) All conditions precedent to the institution of this action have been waived, performed, or have occurred.

## VII. ATTORNEYS' FEES AND COSTS

55) Plaintiffs have retained the undersigned counsel to represent them in this action and are obligated to pay counsel a reasonable fee for their services. Plaintiffs seek to recover their reasonable attorney's fees and costs from Defendants pursuant to applicable law.

## CAUSES OF ACTION

### COUNT I - DEFAMATION *PER SE* (NEGLIGENCE) AGAINST DEFENDANTS MEDSCAPE AND HARRISON

56) Plaintiffs incorporate by reference, re-allege, and adopt paragraphs 1 through 55 of this Complaint as though fully stated herein.

57) This cause of action is for negligent defamation *per se* against the Defendants.

58) The defamatory Article was, and continues to be, published, and disseminated to thousands of readers across the United States including Palm Beach County, Florida.

59) The defamatory Article were published with either knowledge of their falsity or reckless disregard of the truth.

60) Defendants' publication of the false, defamatory statements as defamatory *per se* because they portray a want of integrity in Plaintiffs' personal and professional lives, particularly that they depict Plaintiffs as engaged in a criminal enterprise intended to defraud Gilead.

61) The falsehoods portrayed in the defamatory Article tend to degrade Plaintiffs, bring them into ill repute, and destroy confidence in their integrity. Such falsehoods suggest that Plaintiffs have committed, or that they align themselves with dishonest, immoral, and illegal actions.

62) The defamatory Article therefore harms the reputation of Plaintiffs as to lower their reputation in the community and degrade their businesses.

63) The defamatory Article knowingly disregarded publicly verifiable information showing the falsity of the statements.

64) Defendants have acted, at a minimum, negligently and/or without reasonable care as to the falsity of the statements in the Article in publishing such false and defamatory material in the defamatory Article.

65) Defendants' conduct has caused Plaintiffs damages.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants and an award of:

1. Damages in an amount to be determined at trial;

2. Punitive damages; and

3. The entry of a permanent injunction compelling Defendants from removing the Article from MEDSCAPE's website and prohibiting Defendants from continuing the publication of the defamatory Article or to disseminate any of the defamatory Article through any method of transmission or format; and

4. For such other and further relief as the Court deems just and equitable.

**COUNT II - DEFAMATION *PER SE* (KNOWING OR RECKLESS DISREGARD)- AGAINST AGAINST DEFENDANTS MEDSCAPE AND HARRISON**

66) Plaintiffs incorporate by reference, re-allege, and adopt paragraphs 1 through 55 of this Complaint as though fully stated herein.

67) Plaintiffs bring this cause of action against Defendants for knowing or reckless defamation *per se* and allege that Defendants acted with malice and knowing or reckless disregard as to the truth in publishing the false and defamatory information in the defamatory Article.

68) The defamatory Article was, and continues to be, published, and disseminated to thousands of readers across the United States including Palm Beach County, Florida.

69) The defamatory Article was published with either knowledge of their falsity or reckless disregard of the truth.

70) Defendants' publication of the false, defamatory statements personal and professional lives, particularly that they depict Plaintiffs as engaged in a criminal enterprise intended to defraud Gilead.

71) The falsehoods portrayed in the defamatory Article tend to degrade Plaintiffs, bring them into ill repute, and destroy confidence in their integrity. Such falsehoods suggest that Plaintiffs have committed, or that they align themselves with dishonest, immoral, and illegal actions.

72) The defamatory Article therefore harms the reputation of Plaintiffs as to lower their reputation in the community and degrade their businesses.

73) The defamatory Article knowingly disregarded publicly verifiable information showing the falsity of the statements.

74) Defendants' conduct caused Plaintiffs' damages.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants and an award of:

1. Damages in an amount to be determined at trial;

2. Punitive damages;

3. The entry of a permanent injunction compelling Defendants to remove the Article from MEDSCAPE's website and prohibiting Defendants from continuing the publication of the defamatory Article or to disseminate any of the defamatory Article through any method of transmission or format; and

4. For such other and further relief as the Court deems just and equitable.

### COUNT III - DEFAMATION *PER QUOD* (NEGLIGENCE) AGAINST DEFENDANTS MEDSCAPE AND HARRISON

75) Plaintiffs incorporate by reference, re-allege, and adopt paragraphs 1 through 55 of this Complaint as though fully stated herein.

76) This cause of action is brought against the Defendants for Negligent Defamation *Per Quod*.

77) The defamatory Article was, and continues to be, published, and disseminated to thousands of readers across the United States including Palm Beach County, Florida.

78) The defamatory Article was published with knowledge of the falsity of the statements in the Article or reckless disregard of their truth.

79) Defendants' publication of the false, defamatory statements are defamatory *per se* because they portray a want of integrity in Plaintiffs personal and professional life, particularly that they depict Plaintiffs as engaged in a criminal enterprise intended to defraud Gilead.

80) The falsehoods portrayed in the defamatory Article tend to degrade Plaintiffs, bring them into ill repute, and destroy confidence in their integrity. Such falsehoods suggest

that Plaintiffs have committed, or that they align themselves with dishonest, immoral, and illegal actions.

81) The defamatory Article therefore harms the reputation of Plaintiffs as to lower their reputation in the community and degrade their businesses.

82) Defendants have acted, at a minimum, negligently and/or without reasonable care as to the falsity of the statements in the Article in publishing the false and defamatory material in the defamatory Article.

83) Defendants' conduct has caused Plaintiffs damages and/or special damages.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants and an award of:

1. Damages in an amount to be determined at trial;

2. Punitive damages;

3. The entry of a permanent injunction compelling Defendants to remove the Article from MEDSCAPE's website and prohibiting Defendants from continuing the publication of the defamatory Article or to disseminate any of the defamatory Article through any method of transmission or format; and

4. For such other and further relief as the Court deems just and equitable.

**COUNT IV - DEFAMATION *PER QUOD* (KNOWING OR RECKLESS DISREGARD) AGAINST DEFENDANTS MEDSCAPE AND HARRISON**

84) Plaintiffs incorporate by reference, re-allege, and adopt paragraphs 1 through 55 of this Complaint as though fully stated herein.

85) Plaintiffs bring this cause of action against Defendants for knowing or reckless defamation *per quod* and alleges that Defendants acted with knowing or reckless disregard as to the truth in publishing the false and defamatory material in the defamatory Article.

86) Defendants' publication of the false, defamatory statements are defamatory *per quod* because they portray a want of integrity in Plaintiffs personal and professional lives, particularly that they depict Plaintiffs as engaged in a criminal enterprise intended to defraud Gilead and also prejudice them professionally due to the degradation of their name and reputation.

87) The falsehoods portrayed in the defamatory Article tend to degrade Plaintiffs, bring them into ill repute, and destroy confidence in their integrity. Such falsehoods suggest that Plaintiffs have committed dishonest and illegal actions.

88) The defamatory Article therefore harms the reputation of Plaintiffs as to lower their reputation in the community and degrade their businesses.

89) Defendants have acted, at a minimum, negligently as to the falsity in publishing the false and defamatory material in the defamatory Article.

90) Defendants' conduct caused Plaintiffs damages and/or special damages.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants and an award of:

1. Damages in an amount to be determined at trial;

2. Punitive damages;

3. The entry of a permanent injunction compelling Defendants to remove the Article from MEDSCAPE's website and prohibiting Defendants from continuing the publication of the defamatory Article or to disseminate any of the defamatory Article through any method of transmission or format; and

4. For such other and further relief as the Court deems just and equitable.

**COUNT V- CONSPIRACY TO DEFAME AGAINST DEFENDANTS MEDSCAPE AND HARRISON**

91) Plaintiffs incorporate by reference, re-alleges, and adopts paragraphs 1 through 55 of this Complaint as though fully stated herein.

92) Defendants conspired and agreed together to defame Plaintiffs and to publish the Article which portrays Plaintiffs in a false and defamatory manner.

93) Defendants did, indeed publish the Article and defame Plaintiffs.

94) Each of the Defendants committed overt acts in furtherance of the conspiracy and/or assisted the conspiracy in some way.

95) As a result of the conspiracy and publication of the Article, Plaintiffs have suffered, and continue to suffer, damages in an amount to be determined at trial, including economic losses, lost career opportunities, reputational harm, and emotional distress.

96) These damages were proximately caused by Defendants' conspiracy to defame Plaintiffs.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants and an award of:

1. Damages in an amount to be determined at trial;

2. Punitive damages;

3. The entry of a permanent injunction compelling Defendants to remove the Article from MEDSCAPE's website and prohibiting Defendants from continuing the publication of the defamatory Article or to disseminate any of the defamatory Article through any method of transmission or format; and

4. For such other and further relief as the Court deems just and equitable.

**COUNT VI- INJUNCTIVE RELIEF AGAINST DEFENDANTS MEDSCAPE AND HARRISON**

97) Plaintiffs incorporate by reference, re-alleges, and adopts paragraphs 1 through 55 of this Complaint as though fully stated herein.

98) This is an action by Plaintiffs against Defendants for temporary, preliminary and permanent injunctive relief.

99) Plaintiffs face irreparable harm that is actual and imminent. Defendants published the Article which portray Plaintiffs in a false and defamatory manner and continue to publish the Article.

100) Plaintiffs possess a clear legal right to not have their reputations damaged by Defendants.

101) The Article causes irreparable harm to Plaintiffs and their reputations.

102) As are result of Defendants' publication of the Article, Plaintiffs have suffered irreparable harm. Unless Defendants are compelled by this Court to remove the Article, Plaintiffs will continue to suffer irreparable harm, which cannot be adequately remedied by monetary damages.

103) The injunctive relief is necessary to further prevent the publication and dissemination of the Article and to prevent irreparable injury to Plaintiffs.

104) The entry of the injunction is in the public interest.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants and an award of:

1. The entry of an injunction prohibiting Defendants from continuing the publication of the defamatory Article or to disseminate any of the defamatory Article through any method of transmission or format

2. The entry of an injunction compelling Defendants to take down the Article; and

3. For such other and further relief as the Court deems just and equitable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter a judgment in their favor and against Defendants for:

    A)    all recoverable compensatory, consequential, statutory, and other damages sustained by Plaintiffs;

    B)    both pre-judgment and post-judgment interest on any amounts awarded;

    C)    attorneys' fees, costs, and expenses;

    D)    treble and/or punitive damages as may be allowable under applicable law;

    E)    equitable relief; and

    F)    such other relief as the Court may deem be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all matters properly triable by jury under the laws of the United States and the State of Florida.

Dated: March 10, 2023,        Respectfully submitted,

    **HIRZEL DREYFUSS & DEMPSEY, PLLC**
    *Counsel for Plaintiffs*
    121 Alhambra Plaza, Ste. 1500
    Coral Gables, Florida 33134
    Telephone: (305) 615-1617
    Facsimile: (305) 615-1585

    By: */s/ Leon F. Hirzel*
        **LEON F. HIRZEL**
        Florida Bar No.: 085966
        Email: hirzel@hddlawfirm.com