# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
Case No. 9:23-cv-80791 / MIDDLEBROOKS

KIRILL VESSELOV, an individual,
MIKHAIL VESSELOV, an individual,
and HAVEN HEALTH MANAGEMENT, LLC,
Florida Limited Liability Company,

   Plaintiffs,
v.

LAIRD HARRISON, an individual, and
MEDSCAPE LLC, a New York limited liability
Company,

   Defendants.
_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, KIRILL VESSELOV, MIKHAIL VESSELOV, and HAVEN HEALTH MANAGEMENT ("Plaintiffs"), by and through their undersigned counsel, hereby file their First Amended Complaint against Defendants, LAIRD HARRISON and MEDSCAPE, LLC, ("Defendants") and allege as follows:

### INTRODUCTION

1) This defamation action arises from the publication of an article titled *Gilead Settles With Defendants in HIV PrEP Fraud Lawsuit* ("the Article").[1]

2) The Article was authored by Defendant Laird Harrison on May 16, 2022 and published on Medscape's website.[2] Since then, the Article has been accessible to, and remains accessible to, more than 70 million Medscape members.

---

[1] A true and correct copy of the Article is attached hereto as **Exhibit "A."**

[2] https://www.medscape.com/viewarticle/974065#vp_1

3) The Article purports to provide readers a truthful and accurate report of the outcome of a judicial proceeding in which Plaintiffs were named Defendants. However, the Article is not a reasonable accurate, impartial, and honest account of the outcome of the judicial proceeding as to the Plaintiffs.

4) The headline of the Article states: "HIV drugs sold on the black market. Clinics profiting from a charity program. Shady pharmacy owners purchasing mansions and jets." The Article goes on to present a one-sided and false narrative that misleads its viewers to believe that Plaintiffs had in fact engaged in a massive fraudulent scheme.

## PARTIES

5) Plaintiff, MIKHAIL VESSELOV ("Mikhail"), resides in Palm Beach County, Florida, is domiciled in Florida, and is otherwise *sui juris*.

6) Plaintiff, KIRILL VESSELOV ("Kirill"), resides in Palm Beach County, Florida, is domiciled in Florida, and is otherwise *sui juris*.

7) Plaintiff, HAVEN HEALTH MANAGEMENT LLC ("Haven Health"), is a limited liability company registered in Florida with its principal place of business in Palm Springs, Florida. Mikhail and Kirill are the two members of Haven Health.

8) Defendant, MEDSCAPE, LLC ("Medscape") is a Delaware limited liability company that has a single member, WebMD Health Corp. WebMD Health Corp. is a corporation organized under the laws of Delaware and with a principal place of business in New Jersey. Medscape is a citizen of Delaware and New Jersey.

9) Medscape is self-described as "the leading online global destination for physicians and healthcare professionals worldwide, offering the latest medical news and

expert perspectives; essential point-of-care drug and disease information; and relevant professional education and CME."[3]

10) Medscape membership is free and gives members unlimited access to its entire network of sites and services.

11) Medscape has over 70 million monthly users.

12) Defendant, LAIRD HARRISON ("Harrison") resides in Alameda County, California, is domiciled in California, and is otherwise *sui juris*. Harrison is the author of the Article written about Plaintiffs.

13) The Article describes Harrison as follows:

*Laird Harrison writes about science, health, and culture. His work has appeared in national magazines, in newspapers, on public radio, and on websites. He is at work on a novel about alternate realities in physics. Harrison teaches writing at the Writers Grotto. Visit him at www.lairdharrison.com or follow him on Twitter: @LairdH. For more news, follow Medscape on Facebook, Twitter, Instagram, and YouTube.*

14) Medscape published the Article on its website.

## JURISDICTION AND VENUE

15) This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs; and the parties are of diverse citizenship.

16) Venue is proper in this Court because Defendants intended to and did publish the Article which is accessible in the state of Florida, including Palm Beach County. Defendants published the Article nationally on Medscape's website, which is accessible in Palm Beach County Florida. Venue is proper in this Court because the claims and causes of

---

[3] https://www.medscape.com/public/about

action accrued in Palm Beach County, Florida. Venue is proper in this Court because this Court has personal jurisdiction over Defendants.

17) This Court has personal jurisdiction over Defendants because the events that gave rise to Plaintiffs' claims occurred in Palm Beach County, Florida.

18) This Court has personal jurisdiction over Defendants because they conspired to and did publish the Article on Medscape's website.

19) This Court has personal jurisdiction over Defendants:

    a) pursuant to Section 48.193(1)(a)(1), Florida Statutes, because the causes of action arise from Defendants "operating, conducting, engaging in, or carrying on a business venture in this state;"

    b) because Defendants continuously and systematically do business in Florida;

    c) pursuant to Section 48.193(1)(a)(2), Florida Statutes, because the causes of action arise from Defendants "committing a tortious act within this state."

    d) pursuant to Section 48.193(1)(a)(6), Florida Statutes, because the causes of action arise from Defendants "causing injury to persons...within this state arising out of an act or omission by [Defendants] outside this state" and "at or about the time of the injury" Defendants were "engaged in solicitation or service activities within the state," and "products...processed, serviced, or manufactured anywhere" by Defendants "were used or consumed within this state in the ordinary course of commerce, trade, or use."

    e) pursuant to Section 48.193(2), Florida Statutes, because Defendants are engaged in substantial and not isolated activity within Florida, and therefore, Defendants are subject to the jurisdiction of the court of this state.

20) Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the instant claim occurred in the Southern District of Florida where Plaintiffs Kirill and Mikhail reside and where a substantial number of readers and potential readers who know and associate with them are located who have viewed Article. Venue pursuant to 28 U.S.C. § 1391(b)(2) is also proper because this Court has personal jurisdiction over Defendants.

## **GENERAL ALLEGATIONS**

21) Plaintiffs were three (3) of many named defendants in a lawsuit filed by Gilead Sciences Ireland UC and Gilead Sciences Inc., ("Gilead") on November 30, 2020, in the Southern District of Florida, bearing case No.: 1:20-cv-24523-AMC (the "Gilead Action").

22) Gilead sought injunctive relief against approximately eighty (80) named defendants, including Plaintiffs, alleging that they engaged in a scheme to steal money from Gilead's Advancing Access® Medication Assistance Program ("MAP"), a charitable program funded by Gilead which provides medication to those eligible individuals who are at risk of becoming infected with HIV.

23) Plaintiffs denied all of the material allegations asserted against them by Gilead and filed a counterclaim against Gilead.

24) At all times throughout the litigation, Plaintiffs asserted that Gilead's allegations were without basis in fact.

25) Plaintiffs asserted in their filings in the Gilead action that Gilead's true intent behind the lawsuit was to bolster its bottom line by cutting the number of providers in its medication assistance program network of providers. One way to do so without public backlash, Plaintiffs contended, was by filing allegations of fraud against a host of providers, all of whom denied liability.

26) Plaintiffs ultimately entered into a settlement with Gilead without any admission of liability.

27) Plaintiffs are reputable business owners in the mental and behavioral health fields. They have served tens of thousands of patients nationwide over the course of more than a decade with an impeccable record of performance and compliance.

28) The Article misinforms the reading public by failing to provide an accurate account of the Gilead Action.

29) The Article starts out with the following false representations: "HIV drugs were sold on the black market. Clinics profited from a charity program. The owners purchased mansions and jets."

30) The Article misleads readers into believing that Plaintiffs sold HIV drugs illegally, unlawfully embezzled monies from charity, and engaged in illicit money laundering through their purchase of mansions and jets and other lavish items with the proceeds of Plaintiffs' alleged illegal and criminal activities.

31) The Article mischaracterizes the Gilead Action and the allegations against the Plaintiffs. The allegations in the Article appear to apply to every defendant in the Gilead Action.

32) The Article further represents that Plaintiffs defrauded Gilead and used the money to buy a substantial real estate portfolio. The Article represents that Plaintiffs "provided false paperwork" in order to receive reimbursement from Gilead in connection with the MAP program referenced in the Article.

33) The Article represents that Plaintiffs sold "PrEP" drugs on the black market.

34) The Article represents that Kirill and Mikhail were "key defendants" and "two of the alleged Kingpins" in the lawsuit.

35) The allegations asserted by Gilead were never proven. Plaintiffs vehemently denied and defendant against these allegations throughout the proceeding. The result of Plaintiffs defense and counterclaim was a settlement. No liability was ever found or admitted to by Plaintiffs. Contrary to the scandalous allegations raised by Gilead, the vast majority of Kirill and Mikhail's real estate was acquired well before the alleged acts in the Gilead Action, and their "mansions and jets" preceded any dealings with Gilead.

36) The Article set out to effectively smear the Plaintiffs and their reputation, and recklessly leave out numerous facts about the Plaintiffs that would provide an alternative view of the Gilead Action. Rather, the Article leads readers to believe that Plaintiffs were in fact engaged in a criminal enterprise intended to defraud Gilead.

37) Harrison improperly suppressed the fact that the allegations lodged against Plaintiffs by Gilead were never proven, were contested, and no admission of liability was ever made by Plaintiffs.

38) Harrison improperly suppressed the fact that Plaintiffs filed a counterclaim against Gilead.

39) Harrison purposefully disregarded filings made by Plaintiffs in the Gilead Action, including without limitation, their Answer, Affirmative Defenses, and Counterclaim.

40) Harrison expressly sought to mislead readers to believe that the Article's false portrayal of Plaintiffs is accurate in form or substance, when in fact, Harrison's portrayal of Plaintiffs and the outcome of the Gilead Action with respect to Plaintiffs was not a fair and accurate summary of the judicial proceeding.

41) Prior to the publication of the Article, Harrison conducted an "investigation." During that investigation, Harrison reviewed the filings in the Gilead Action, including the pleadings, transcripts of testimony, and other documents filed on the docket.

42) Harrison contacted Robyn Lynn Sztyndor, Esq., counsel to several defendants in the Gilead Action, who provided him with a statement.

43) Harrison also contacted an attorney for Plaintiffs, Staci Genet Esq. Ms. Genet was counsel of record for Plaintiffs in the Gilead Action for only a brief time and was not lead counsel. Ms. Genet instructed Harrison to contact, Cheyenne N. Riker, Esq., who is Plaintiffs' in-house counsel and their lead counsel in the Gilead Action. Harrison failed to contact Mr. Riker for a statement.

44) Harrison proceeded to finalize and publish the article without obtaining a statement from Plaintiffs.

45) The faslehoods in the Article are contradicted by the facts in the public record.

46) Defendants knew they lacked support for the false and defamatory statements when they published the Article. Defendants knew they had no actual evidence to support their representations because no such evidence exists. Indeed, the complaint filed in the Gilead lawsuit contradicts the representations contained in the Article.

47) The Article was written by Harrison with the intention that it would be published on Medscape's website.

48) Harrison provided the defamatory Article to Medscape and agreed and conspired with Medscape for the defamatory Article to be published on Medscape's website in May 2022. Upon information and belief, Medscape paid Harrison for the Article.

49) Medscape and Harrison agreed and conspired to defame Plaintiffs through the publication of the Article on Medscape's website.

50) The defamatory statements made by Harrison in the Article were made in the course and scope of his employment relationship and/or agency relationship with Medscape, thus making Medscape vicariously liable for any and all damages resulting from Harrison's tortious conduct, in addition to Medscape being directly liable for the publication of false

statements and for its failure to exercise due care to prevent the publication or utterance of such statements.

51) Defendants' decision to omit any mention of Plaintiffs' defense in the Gilead Action, as well as their false account of the accusations made against Plaintiffs, was done intentionally and deliberately with knowledge and malice to facilitate their ability to sensationalize the Article by misleading viewers into believing that Plaintiffs in fact committed the fraudulent and scandalous conduct that is expressed in the Article.

52) As a direct and proximate result of Defendants' defamatory actions, plaintiff has suffered and continues to suffer damage, including, but not limited to, damage to their reputation in the medical community, financial losses, loss of contracts with wholesale pharmacy distributors, loss of financing opportunities, embarrassment, pain, humiliation, emotional distress, mental anguish, and bills for professional services.

53) Defendants knew that its statements were false at the time the statements were made or had serious doubts about their truth, and nonetheless, made and/or published the statements with an intent to indulge ill will, hostility, and an intent to harm, thus giving rise to the right to recover punitive damages in order to deter Defendants from engaging in this conduct in the future and hopefully restore integrity to both Defendants and the media as a whole.

54) As a result of the foregoing conduct, Plaintiffs have no choice but to initiate this litigation.

55) All conditions precedent to the institution of this action have been waived, performed, or have occurred.

56) Plaintiffs have retained the undersigned counsel to represent them in this action and are obligated to pay counsel a reasonable fee for their services. Plaintiffs seek to

recover their reasonable attorney's fees and costs from Defendants pursuant to applicable law.

## DEFENDANTS WERE PLACED ON NOTICE REGARDING DEFAMATION

57) On June 10, 2022, Plaintiffs, by and through HAVEN HEALTH MANAGEMENT's general counsel, delivered a Pre-Suit Notice Letter (the "Notice Letter") to Defendant Medscape, pursuant to Section 770.01 of the Florida Statutes, specifying Plaintiffs Kirill and Mikhail's harm caused by Medscape's conduct, and providing written demands to remedy Medscape's actions.

58) On September 27, 2022 Plaintiffs, by and through HAVEN HEALTH MANAGEMENT's general counsel, delivered a Second Pre-Suit Notice Letter (the "Second Notice Letter") to Defendant Medscape pursuant to Section 770.01 of the Florida Statutes. The Notice Letter and Second Notice Letter are attached hereto as **Composite Exhibit "B."**

59) In these letters, Kirill and Mikhail demanded that Medscape issue a removal of the Article.

60) Upon information and belief, Medscape provided a copy of the Notice Letter and the Second Notice Letter to Harrison at some point of time in 2022.

61) To the date of this Complaint, Medscape failed to make any such retractions, removal of the Article or otherwise comply with Plaintiffs' demands.

## CAUSES OF ACTION

### COUNT I - DEFAMATION *PER SE* (NEGLIGENCE)

62) Plaintiffs incorporate by reference, re-allege, and adopt paragraphs 1 through 61 of this Complaint as though fully stated herein.

63) This cause of action is for negligent defamation *per se* against the Defendants.

64) The defamatory Article was, and continues to be, published, and disseminated to thousands of readers across the United States including Palm Beach County, Florida.

65) The defamatory Article were published with either knowledge of their falsity or reckless disregard of the truth.

66) Defendants' publication of the false, defamatory statements as defamatory *per se* because they portray a want of integrity in Plaintiffs' personal and professional lives, particularly that they depict Plaintiffs as engaged in a criminal enterprise intended to defraud Gilead.

67) The falsehoods portrayed in the defamatory Article tend to degrade Plaintiffs, bring them into ill repute, and destroy confidence in their integrity. Such falsehoods suggest that Plaintiffs have committed, or that they align themselves with dishonest, immoral, and illegal actions.

68) The defamatory Article therefore harms the reputation of Plaintiffs as to lower their reputation in the community and degrade their businesses.

69) The defamatory Article knowingly disregarded publicly verifiable information showing the falsity of the statements.

70) Defendants have acted, at a minimum, negligently and/or without reasonable care as to the falsity of the statements in the Article in publishing such false and defamatory material in the defamatory Article.

71) Defendants' conduct has caused Plaintiffs damages.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants and an award of:

1. Damages in an amount to be determined at trial;
2. Punitive damages; and
3. The entry of a permanent injunction compelling Defendants from removing the Article from Medscape's website and prohibiting Defendants from continuing the publication of the defamatory Article or to disseminate any of the defamatory Article through any method of transmission or format; and

4. For such other and further relief as the Court deems just and equitable.

## COUNT II - DEFAMATION *PER SE* (KNOWING OR RECKLESS DISREGARD)

72) Plaintiffs incorporate by reference, re-allege, and adopt paragraphs 1 through 61 of this Complaint as though fully stated herein.

73) Plaintiffs bring this cause of action against Defendants for knowing or reckless defamation *per se* and allege that Defendants acted with malice and knowing or reckless disregard as to the truth in publishing the false and defamatory information in the defamatory Article.

74) The defamatory Article was, and continues to be, published, and disseminated to thousands of readers across the United States including Palm Beach County, Florida.

75) The defamatory Article was published with either knowledge of their falsity or reckless disregard of the truth.

76) Defendants' publication of the false, defamatory statements personal and professional lives, particularly that they depict Plaintiffs as engaged in a criminal enterprise intended to defraud Gilead.

77) The falsehoods portrayed in the defamatory Article tend to degrade Plaintiffs, bring them into ill repute, and destroy confidence in their integrity. Such falsehoods suggest that Plaintiffs have committed, or that they align themselves with dishonest, immoral, and illegal actions.

78) The defamatory Article therefore harms the reputation of Plaintiffs as to lower their reputation in the community and degrade their businesses.

79) The defamatory Article knowingly disregarded publicly verifiable information showing the falsity of the statements.

80) Defendants' conduct caused Plaintiffs' damages.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants and an award of:

1. Damages in an amount to be determined at trial;

2. Punitive damages;

3. The entry of a permanent injunction compelling Defendants to remove the Article from Medscape's website and prohibiting Defendants from continuing the publication of the defamatory Article or to disseminate any of the defamatory Article through any method of transmission or format; and

4. For such other and further relief as the Court deems just and equitable.

## COUNT III - DEFAMATION *PER QUOD* (NEGLIGENCE)

81) Plaintiffs incorporate by reference, re-allege, and adopt paragraphs 1 through 61 of this Complaint as though fully stated herein.

82) This cause of action is brought against the Defendants for Negligent Defamation *Per Quod*.

83) The defamatory Article was, and continues to be, published, and disseminated to thousands of readers across the United States including Palm Beach County, Florida.

84) The defamatory Article was published with knowledge of the falsity of the statements in the Article or reckless disregard of their truth.

85) Defendants' publication of the false, defamatory statements are defamatory *per se* because they portray a want of integrity in Plaintiffs personal and professional life, particularly that they depict Plaintiffs as engaged in a criminal enterprise intended to defraud Gilead.

86) The falsehoods portrayed in the defamatory Article tend to degrade Plaintiffs, bring them into ill repute, and destroy confidence in their integrity. Such falsehoods suggest that Plaintiffs have committed, or that they align themselves with dishonest, immoral, and illegal actions.

87) The defamatory Article therefore harms the reputation of Plaintiffs as to lower their reputation in the community and degrade their businesses.

88) Defendants have acted, at a minimum, negligently and/or without reasonable care as to the falsity of the statements in the Article in publishing the false and defamatory material in the defamatory Article.

89) Defendants' conduct has caused Plaintiffs damages and/or special damages.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants and an award of:

1. Damages in an amount to be determined at trial;

2. Punitive damages;

3. The entry of a permanent injunction compelling Defendants to remove the Article from Medscape's website and prohibiting Defendants from continuing the publication of the defamatory Article or to disseminate any of the defamatory Article through any method of transmission or format; and

4. For such other and further relief as the Court deems just and equitable.

**COUNT IV - DEFAMATION *PER QUOD* (KNOWING OR RECKLESS DISREGARD)**

90) Plaintiffs incorporate by reference, re-allege, and adopt paragraphs 1 through 61 of this Complaint as though fully stated herein.

91) Plaintiffs bring this cause of action against Defendants for knowing or reckless defamation *per quod* and alleges that Defendants acted with knowing or reckless disregard as to the truth in publishing the false and defamatory material in the defamatory Article.

92) Defendants' publication of the false, defamatory statements are defamatory *per quod* because they portray a want of integrity in Plaintiffs personal and professional lives, particularly that they depict Plaintiffs as engaged in a criminal enterprise intended to defraud Gilead and also prejudice them professionally due to the degradation of their name and reputation.

93) The falsehoods portrayed in the defamatory Article tend to degrade Plaintiffs, bring them into ill repute, and destroy confidence in their integrity. Such falsehoods suggest that Plaintiffs have committed dishonest and illegal actions.

94) The defamatory Article therefore harms the reputation of Plaintiffs as to lower their reputation in the community and degrade their businesses.

95) Defendants have acted, at a minimum, negligently as to the falsity in publishing the false and defamatory material in the defamatory Article.

96) Defendants' conduct caused Plaintiffs damages and/or special damages.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants and an award of:

1. Damages in an amount to be determined at trial;

2. Punitive damages;

3. The entry of a permanent injunction compelling Defendants to remove the Article from Medscape's website and prohibiting Defendants from continuing the publication of the defamatory Article or to disseminate any of the defamatory Article through any method of transmission or format; and

4. For such other and further relief as the Court deems just and equitable.

**COUNT V- CONSPIRACY TO DEFAME**

97) Plaintiffs incorporate by reference, re-alleges, and adopts paragraphs 1 through 61 of this Complaint as though fully stated herein.

98) Defendants conspired and agreed together to defame Plaintiffs and to publish the Article which portrays Plaintiffs in a false and defamatory manner.

99) Defendants did, indeed publish the Article and defame Plaintiffs.

100) Each of the Defendants committed overt acts in furtherance of the conspiracy and/or assisted the conspiracy in some way.

101) As a result of the conspiracy and publication of the Article, Plaintiffs have suffered, and continue to suffer, damages in an amount to be determined at trial, including economic losses, lost career opportunities, reputational harm, and emotional distress.

102) These damages were proximately caused by Defendants' conspiracy to defame Plaintiffs.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants and an award of:

1. Damages in an amount to be determined at trial;

2. Punitive damages;

3. The entry of a permanent injunction compelling Defendants to remove the Article from Medscape's website and prohibiting Defendants from continuing the publication of the defamatory Article or to disseminate any of the defamatory Article through any method of transmission or format; and

4. For such other and further relief as the Court deems just and equitable.

### COUNT VI- INJUNCTIVE RELIEF

103) Plaintiffs incorporate by reference, re-alleges, and adopts paragraphs 1 through 61 of this Complaint as though fully stated herein.

104) This is an action by Plaintiffs against Defendants for temporary, preliminary and permanent injunctive relief.

105) Plaintiffs face irreparable harm that is actual and imminent. Defendants published the Article which portray Plaintiffs in a false and defamatory manner and continue to publish the Article.

106) Plaintiffs possess a clear legal right to not have their reputations damaged by Defendants.

107) The Article causes irreparable harm to Plaintiffs and their reputations.

108) As are result of Defendants' publication of the Article, Plaintiffs have suffered irreparable harm. Unless Defendants are compelled by this Court to remove the Article, Plaintiffs will continue to suffer irreparable harm, which cannot be adequately remedied by monetary damages.

109) The injunctive relief is necessary to further prevent the publication and dissemination of the Article and to prevent irreparable injury to Plaintiffs.

110) The entry of the injunction is in the public interest.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants and an award of:

1. The entry of an injunction prohibiting Defendants from continuing the publication of the defamatory Article or to disseminate any of the defamatory Article through any method of transmission or format

2. The entry of an injunction compelling Defendants to take down the Article; and

3. For such other and further relief as the Court deems just and equitable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter a judgment in their favor and against Defendants for:

A) all recoverable compensatory, consequential, statutory, and other damages sustained by Plaintiffs;

B) both pre-judgment and post-judgment interest on any amounts awarded;

C) attorneys' fees, costs, and expenses;

D) treble and/or punitive damages as may be allowable under applicable law;

E) equitable relief; and

F) such other relief as the Court may deem be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all matters properly triable by jury under the laws of the United States and the State of Florida.

Dated: June 29, 2023

Respectfully submitted,

**HIRZEL DREYFUSS & DEMPSEY, PLLC**
*Counsel for Plaintiffs*
121 Alhambra Plaza, Ste. 1500
Coral Gables, Florida 33134
Telephone: (305) 615-1617
Facsimile: (305) 615-1585

By: */s/ Leon F. Hirzel*
    **LEON F. HIRZEL**
    Florida Bar No.: 085966
    Email: hirzel@hddlawfirm.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was filed on June 29, 2023, via CM/ECF, which will generate Notices of Electronic Filing to all counsel of record.

By: */s/ Leon F. Hirzel*
    **LEON F. HIRZEL**